IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BRITTNEY HALLMAN, on behalf of herself and all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FLAGSHIP RESTAURANT GROUP, LLC,<br><br>Defendant. | Case No. 8:24-cv-0222-JFB-JMD<br><br>**DEFENDANT FLAGSHIP RESTAURANT GROUP, LLC'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS COUNT I OF THE AMENDED COMPLAINT** |

Defendant Flagship Restaurant Group, LLC ("Flagship") respectfully submits this brief in support of its Motion to Dismiss Count I of the Amended Complaint (ECF No. 54).

## INTRODUCTION

Count I relies, in part, on the Department of Labor's ("DOL") 2021 final rule (a codification of what is known as the "80/20 Rule"), which was recently vacated by the Fifth Circuit. *Restaurant Law Center v. United States Department of Labor*, 2024 No. 23-50562, WL 3911308 (5th Cir. Aug. 23, 2024). The remaining Count I allegations fail to state any claim upon which relief may be granted. Count I fails as a matter of law, and should be dismissed with prejudice.

## LEGAL STANDARD

Rule 12(b)(6) "permits dismissal when a claim is not cognizable under applicable law." *Solorio v. Miller*, 700 F.Supp.3d 735, 743 (D. Neb. 2023). "[A] claim survives a Rule 12(b)(6) motion to dismiss only if the complaint's nonconclusory allegations, accepted as true, make it not just conceivable but plausible that the defendant is liable" and when the pleadings "are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility." *Id* at 744 (internal citation omitted).

# ARGUMENT

**I.  Count I should be dismissed because (1) the "80/20 Rule" has been vacated and (2) the other allegations do not satisfy the *Iqbal / Twombly* standard.**

The Fifth Circuit recently vacated the DOL's 2021 final rule, which "effectively codified" the 80/20 Rule that had been previously described in DOL guidance. *Restaurant Law Center,* WL 3911308, at *2, 9, 11; *see* 1988 DOL Field Operation's Handbook § 30d06(e)-(f). Count I of the Amended Complaint relies on the vacated 2021 DOL final rule. (*See e.g.* ECF No. 35, pp. 10-11, ¶¶26-28, 32). *Restaurant Law Center* calls into doubt whether the 80/20 Rule, as relied upon in the Amended Complaint (ECF No. 35), is in effect in the Eighth Circuit.

Understanding the history of the final rule and the tip credit framework is important. The FLSA permits employers to take a "tip credit" when paying the wages of a "tipped employee." 29 U.S.C. § 203(m)(2)(A); *Restaurant Law Center,* WL 3911308, at *1. The tip credit allows employers to pay tipped employees $2.13 per hour, under the theory that a large portion of tipped employee's earnings come from tips. *Restaurant Law Center*, WL 3911308, at *1. If an employee earns enough tips such that the employee makes more than the federal minimum hourly wage, then the employer may claim a "tip credit" against what it otherwise would normally have to pay the employee. The FLSA requires employers to make up the difference between the $2.13 per hour rate and the general minimum wage if the difference does not end up being covered by tips. *Id*.

In 1967, one year after the FLSA was amended to include the tip credit, the DOL issued its "dual-jobs regulation." *Id*. This regulation recognizes that employees may be engaged in dual-jobs for the same employer: one which produces tips and one which does not. *Fast v. Applebee's International, Inc.*, 638 F.3d 872, 875 (8th Cir. 2011); *citing* 29 C.F.R. § 531.56(e). To interpret this regulation, the DOL published several opinion letters over the years, and in 1988 published the "so-called 80/20 guidance [synonymous with the 80/20 Rule referenced throughout this and

2

other briefs] in its sub-regulatory Field Operations Handbook." *Restaurant Law Center*, WL 3911308, at *1. The 80/20 guidance "began to oscillate with every change in presidential administration," until 2021, when the DOL issued a final rule that "effectively codified" its longstanding 80/20 Rule. *Id.* at *2; *see Federal Register*, Vol. 86, No. 207, page 60114.

The Fifth Circuit recently vacated the DOL's 2021 final rule in light of the overturning of *Chevron USA Inc. v. Natural Resources Defense Counsel, Inc.*¸ 467 U.S. 837. 104 S.Ct. 2778 (1984). *Restaurant Law Center,* WL 3911308, at *9, 11. The Fifth Circuit summarized the DOL's 2021 final rule as such:

> An employer may take the tip credit for tip-producing work. But if more than 20 percent of an employee's workweek is spent on directly supporting work, the employer cannot claim the tip credit for that excess. Nor can directly supporting work be performed for more than 30 minutes at any given time. An employer may not take the tip credit for any time spent on work not part of the tipped occupation. In addition, the Final Rule amended the 1967 dual-jobs regulation to omit the counterexample of a waitress engaging in duties related to her occupation.

*Id.* at *2.

Tasked with "evaluating the permissibility of the 2021 Final Rule under the FLSA," *Restaurant Law Center* holds that "the FLSA is clear: an employer may claim the tip credit for any employee who, when 'engaged in' her given 'occupation…customarily and regularly receives *more than $30 a month in tips*' even if that employee engages in non-tip producing tasks. *Id.* at *4, *7 (ellipses and emphasis in the original); *citing* 29 U.S.C. § 203(t). The focus is on what it means to "be engaged in an occupation" that produces tips. *Restaurant Law Center* recognizes that the dual-jobs regulation itself is still valid. *Id.* at *8. The dual-jobs regulation "focuses on 'whether the employee performs tasks *unrelated* to his or her tipped occupation,' not the '*amount of time*' spent on untipped tasks." *Id.* (*citing Marsh v. J. Alexander's LLC*, 905 F.3d 610, 635 (9th Cir. 2018)). "'Dual' really means dual. The [dual-jobs regulation] envisioned two unrelated and

separate occupations: maintenance work and waitressing. By contrast, the Final Rule applies the dual-jobs framework to disaggregate the component tasks of a single occupation." *Id.* (internal citations omitted). "In summary, the Final Rule applies the tip credit in a manner inconsistent with the FLSA's text. Whatever benefit may result from the Final Rule's 'functional' test, we are guided instead by the core administrative-law principle that an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate." *Id.* (internal citations omitted). Under this framework, a server who spends thirty-one minutes rolling silverware is still "engaged in the occupation" of being server, and not another occupation, allowing an employer to take a tip credit.

The *Restaurant Law Center* court further concluded that the DOL's 2021 final rule is "also arbitrary and capricious" under the Administrative Procedure Act. *Id.*; 5 U.S.C. § 706(2)(A). The impermissible line drawn in the DOL's 2021 final rule centers around "*pursuing tips*, rather than their relationship to the *occupation*." *Id.* at *10. (Emphasis in the original). The court emphasized that this is not what the FLSA calls the DOL to consider. *Id.* "If a core duty of a server is bussing and setting up tables, the server is undoubtedly engaged in his occupation. It does not matter whether he is tipped or not for those duties." *Id.*

Expanding on its reasons for finding the DOL's 2021 final rule was arbitrary and capricious, the *Restaurant Law Center* court took issue with the "inconsistent treatment of supporting work based only on the work's duration" and opined that:

> We cannot think of any occupation for which every duty is directly tip-producing, as the Final Rule demands. Inevitably, employees in any occupation receiving tips will regularly be tasked with duties that merely support tip-producing work. Servers will set and buss tables. Bartenders will prepare drink mixes. A parking attendant will move patrons' cars around the valet parking garage. The Final Rule ties the tip credit not to the character of these various duties as integral to their respective occupations, but to the amount of time that these duties take. Like the tipping nexus, this temporality requirement can be found nowhere in the statute.

*Id.* While lines may still be drawn, it is clear that the line may not be drawn as articulated by the DOL's 2021 final rule. If a server or bartender also worked as a maintenance worker for a restaurant, then the line for the dual-job regulations could be drawn there. When a tipped employee is engaged in tasks which are the core of her tipped occupation, then the line has not been crossed into a "dual job." She is still a waitress and engaged in a tipped occupation. After *Restaurant Law Center*, an employer may take a tip credit against the federal minimum wage for an employee engaged solely in a tipped occupation even if the tipped employee engages in the non-tip producing activities of the tipped occupation.

Count I of the Amended Complaint relies upon an understanding of the FLSA's dual-job regulation that goes against the plain text of the FLSA. The Amended Complaint does not allege that the Plaintiff or other similarly situated employees engaged in side work that was not a part of their tipped occupation. Rather, the Amended Complaint alleges that "[d]uring her employment with Defendant during the statutory period, Defendant required Plaintiff to engaged in non-tip production activities, **such as rolling silverware, cleaning tables, and a variety of other side work for more than 20% of her time.**" (ECF No. 35, p.10, ¶26). (Emphasis added). Rolling silverware, cleaning tables, and similar "side work" is part of the "core duty of a server" similar to "bussing and setting up tables" and it "does not matter whether he is tipped or not for those duties" for the tip credit to be taken by Flagship. *Restaurant Law Center*, WL 3911308, at *10

The gravamen of Count I's allegations is that "[Flagship] had a policy and practice of failing to properly pay minimum wages **because it violated the rules for using the tip credit, including by requiring servers/bartenders to spend more than 20 percent of their time engaged in non-tip producing activities.**" (ECF No. 35, pp.10-11, ¶32). (Emphasis added). Like the now vacated DOL 2021 final rule, these allegations tie "the tip credit not to the character of

5

these various duties as integral to their respective occupations, but to the amount of time that these duties take." *Restaurant Law Center*, WL 3911308, at *10. In so doing, these allegations fail because the DOL's 2021 final rule has been vacated, and Count I's allegations relating to Flagship taking a tip credit fail should be dismissed for failing to state a claim. *See Solorio*, at *4.

Even though vacating the final rule results in a return to previous DOL regulatory guidance, the operative regulation is now unlawful. The "remedy of vacatur under the Administrative Procedure Act restores the prior regulatory status quo" (*Ctr for Biological Diversity v. Haaland*, 2023 WL 5161741 at *7 (D.D.C. Aug. 11, 2023) (internal citations omitted)). This means that the effect of *Restaurant Law Center* vacating the DOL 2021 final rule is that the law in the Eighth Circuit reverts to its pre-2021 status. *See* 1988 DOL Field Operation's Handbook § 30d06(e)-(f). However, the DOL's 2021 final rule "effectively codified" this regulatory guidance to which the Eighth Circuit now returns. Therefore, the regulation in effect is unlawful for substantially the same reasons as the final rule into which this regulation was transformed is unlawful and any allegations relying on that regulation fail as a matter of law.

Further, seismic changes in administrative law doctrines calls into question how narrowly Eighth Circuit cases analyzing FLSA claims, *i.e. Fast* and *Cope v. Let's Eat Out, Inc.*, 354 F.Supp.3d 976 (W.D. Mo. 2019), are to be read. While *Fast* and *Cope* are not necessarily overturned in the wake of *Loper Bright Enterprises v. Raimondo*, 144 S.Ct.2244 (2024) (which overturned *Chevron* deference) and *Kisor* (both of which occurred after *Fast* and *Cope*), *Fast* and *Cope* are to be read narrowly and do not control here.

Both *Fast* and *Cope* were decided before *Chevron* deference was overturned. This is critical. *Fast* expressly appeals to *Chevron* deference in its reasoning. 638 F.3d at 877 and 879. The *Cope* court similarly relied on *Chevron* deference in its ruling, which interpreted a DOL

6

opinion letter (and not the 80/20 regulation). 354 F.Supp.3d at 987. *Fast* and *Cope*'s reliance on a now *defunct* doctrine calls into question whether or not these cases control here. 374 F.Supp.3d 976.

Both *Fast* and Cope were decided before the Supreme Court limited the scope of *Auer* deference. *See Kisor v. Wilke*, 588 U.S. 558, 139 S. Ct. 2400 (2019). *Cope*'s holding is not relevant here, since it only interpreted an opinion letter, not the 80/20 regulatory guidance at issue here. *Fast*'s holding, on the other hand, addresses the 80/20 regulatory guidance at issue, but, in light of current jurisprudence (*e.g. Loper* and *Kisor*), *Fast* should be read narrowly. Under *Kisor*'s framework, courts now may not be permitted to apply *Auer* deference to the relevant regulation.[1] As a result, *Fast* must be read narrowly.

The holdings of *Fast* and *Cope* are limited to their own germane controversies and do not actually provide that the 80/20 Rule as relied on by the Plaintiff is the *de facto* status quo. *Fast* held that "we hold **only** that the district court properly concluded that the Handbook's interpretation of § 531.56(e) governs **this case**." 638 F.3d at 881. (Emphasis added). *Cope*, a case decided by a district court in another jurisdiction, merely held that a 2018 DOL opinion letter was not entitled to *Auer* deference, not that the 80/20 Rule is forever binding upon the Eighth Circuit.

---

[1] Some of these limitations are described as such: "First and foremost, a court should not afford *Auer* deference unless the regulation is genuinely ambiguous." *Id* (*citing Seminole Rock*, 325 U.S. at 414 (deferring only "**if the meaning of the words used is in doubt**.") (emphasis added)). "If uncertainty does not exist, there is no plausible reason for deference. The regulation then just means what it means – and the court must give it effect, as the court would any law." Further, "before concluding that a rule is genuinely ambiguous, a court must exhaust all the 'traditional tolls' of construction." *Id*. at 575; *citing Chevron*, 467 U.S. at 843. "A court cannot wave the ambiguity flag just because it found the regulation impenetrable on first read." *Id*. Finally, a court must make an independent inquiry into whether the character and context of the agency entitles it to **controlling weight**." *Id.* at 576. (Emphasis added). This includes considering whether the regulation is one actually made by the agency, whether the agency's interpretation in some way implicate its substantive expertise, and whether the reading of a rule reflects fair and considered judgment. *Id.* at 577, 579. In summary, "*Auer* deference gives an agency significant leeway to say what its own rules mean" but "that phrase 'when it applies' is important – because it often doesn't. As described above, this Court has cabined *Auer's* scope in varied and critical ways – and in exactly that measure, has maintained a strong judicial role in interpreting rules." *Id*. at 580.

374 F.Supp.3d 976.

After *Kisor* and *Loper*, a new era of jurisprudence regarding administrative law doctrine began, which means that prior FLSA decisions must be read carefully to determine whether or not they are applicable, and in this case, a careful reading shows they are not. So, Count I may be dismissed without this Court ignoring prior Eighth Circuit FLSA decisions.

> a. *The Amended Complaint misstates the law regarding tip sharing under the FLSA and otherwise fails to meet applicable pleading standards.*

Not all mandatory tip sharing is unlawful. The Amended Complaint alleges that "[t]he FLSA forbids employers from requiring an employee to contribute to or share gratuities in a pool operated to benefit the employer or employees" and that "employees' agreements to share gratuities must be voluntary and without employer coercion or participation." (ECF No. 35, p.11, ¶¶35-36). But that is not correct. Employers may require employees to share or pool tips with other employees under certain conditions. *See e.g.* 29 C.F.R. § 531.52(b)(1). "The employer may **require** an employee from whom the employer takes a tip credit to contribute tips to a tip pool only if it is limited to employees who customarily and regularly receive tips." 29 C.F.R. § 531.54(c)(1) (Emphasis added). Furthermore, a tipped employee "may voluntarily choose to share tips with an otherwise ineligible employee so long as that tip-sharing is done without coercion by the employer." *Kubiak v. S.W. Cowboy, Inc.*, 164 F.Supp.3d 1344, 1355 (M.D. Fla. 2016).

Count I's allegations relating to tip sharing either rely on a misunderstanding of the law or otherwise fail to meet pleading standards. Allegations such as "[a]ny agreement by servers or bartenders to pool or share tips with other employees was made with Defendant's unlawful participation" and "[a]ny agreement by servers or bartenders to pool or share tips with other employees was made with Defendant's unlawful coercion" are not sustainable under applicable

law, even when viewed in a light most favorable to the Plaintiff. (ECF No. 35, p.11, ¶¶39-40). These allegations rely on a misunderstanding of the FLSA's view on tip sharing arrangements because mandatory tip sharing is permitted.

Other allegations in Count I include: (1) "Flagship unlawfully required Plaintiff and Putative Class [sic] to share tips with other employees" (ECF No. 35. P. 11, ¶38), (2) "Flagship's conduct in violation of the FLSA was willful and repeated" (*Id.* at ¶41), (3) "Flagship's conduct constitutes a willful violation of the FLSA, as defined in 29 U.S.C. § 255(a)." (*Id.* p. 12, ¶43). These allegations are mere legal conclusions couched as facts or simply recitations of Flagship's alleged liability. To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim that is plausible on its face. *DeCastro v. Hot Springs Neurology Clinic, P.A.*, 107 F.4th. 813, 816 (8th Cir. 2024) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Such "factual matter does not include labels or formulaic recitations of the elements of a cause of action, naked assertions of claims, or legal conclusions couched as facts." *Id.* (internal citations omitted); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal citations omitted).

Count I does purport to incorporate other allegations, but incorporation does not solve the problem. (ECF No. 35, p. 8, ¶17). The Amended Complaint acknowledges that employees were given notice of this tip pooling system (*Id.* pp. 2-3 at ¶¶6, 11). The Amended Complaint's conclusory allegation that "Defendant's practice outlned [sic] above, in which tips earned by servers and bartenders performing tip-producing work are required to share their tips with other employees such as sushi chefs, support staff, server assistants, and food runners, is unlawful" is

only a legal conclusion couched as a fact. (*Id.*, p. 3, ¶12). This allegation and others (e.g. pp.2-3, ¶¶8,9) do not even recite threadbare elements for a cause of action. It is not clear from the Amended Complaint which other employees who allegedly participated in a tip pool with the servers and bartenders did not "regularly and customarily receive tips." Merely referencing "non-tipped employees" in paragraph 7 without describing which employees were "non-tipped" (or which employees were not permitted to share in a tip pool with servers and bartenders) is not enough to rise to the level of plausibility. These allegations do not meet the liberal pleading standards employed by federal courts. Viewing these allegations as a whole and in a light most favorable to the Plaintiff, no allegation is sufficiently pled to sustain a claim upon which relief may be granted and fail as a result.

    b. *The Amended Complaint's allegations relating to tip credit notice are not adequately pled.*

The Amended Complaint alleges that for at least part of the statutory period, Flagship did not provide the "proper notice" that a tip credit could be taken by Flagship. (ECF No. 35, p. 11, ¶33). 29 C.F.R. § 531.59(b) provides only that "an employer is not eligible to take the tip credit unless it has informed its tipped employees in advance." The allegations here, however, are merely a recitation of Flagship's alleged liability and fail to meet applicable pleading standards. In particular, the Amended Complaint fails to state what the "proper notice" is or should have been and how Flagship allegedly failed to provide it. The Amended Complaint does not even address if Flagship gave any notice (proper or not) at all. Rather, this allegation is a formulaic recitation of the elements of a cause of action, a naked assertion of a claim, and amounts to nothing but a legal conclusion couched as a fact. *See Iqbal*, 556 U.S. at 679. These allegations do not meet the plausibility standard set by the Supreme Court of the United States and should be dismissed.

## CONCLUSION

WHEREFORE, Defendant Flagship Restaurant Group, LLC respectfully requests this Court enter an order dismissing Count I of the Amended Complaint with prejudice, and for such other and further relief as this Court may deem appropriate.

DATED this 30th day of September, 2024

                                             FLAGSHIP RESTAURANT
                                             GROUP, LLC, Defendant

                                             By: */s/ Timothy R Hutchinson*
                                             Margaret C. Hershiser, #19545
                                             Patrice D. Ott, #24435
                                             Timothy R. Hutchinson, #27880
                                             KOLEY JESSEN P.C., L.L.O.
                                             One Pacific Place, Suite 800
                                             1125 South 103rd Street
                                             Omaha, NE 68124-1079
                                             (402) 390-9500
                                             (402) 390-9005 (facsimile)
                                             Margaret.Hershiser@koleyjessen.com
                                             Patrice.Ott@koleyjessen.com
                                             Tim.Hutchinson@koleyjessen.com

                                             *Attorneys for Defendant*

## **CERTIFICATE OF COMPLIANCE**

The undersigned hereby affirms, pursuant to NECivR 7.1(d), that this document does not exceed 13,000 words. Utilizing the word-count function of Microsoft Word 2024, this document contains 3,853 words, inclusive of all text, including the caption, headings, footnotes, and quotations.

                                             */s/ Timothy R. Hutchinson*

## CERTIFICATE OF SERVICE

On September 30, 2024, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ *Timothy R. Hutchinson*