IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BRITTNEY HALLMAN, on behalf of herself and all other similarly situated; <br><br> Plaintiff, <br><br> vs. <br><br> FLAGSHIP RESTAURANT GROUP, LLC, <br><br> Defendant. | **8:24CV222** <br><br><br> **ORDER** |

Before the Court is Flagship Restaurant Group, LLC's ("Flagship's") First and Second Motions to Dismiss Plaintiff's Amended Complaint (Filing No. 42; Filing No. 54). This is a wage and hour action brought by Brittany Hallman, a former Flagship employee, as a collective action under the federal Fair Labor Standards Act ("FLSA") (28 U.S.C. §§ 201–219), and a class action under the Missouri Minimum Wage Law ("MMWL") (Mo. Rev. Stat. § 290.500–290.530) and Nebraska common law.  Hallman's complaint, while not overly detailed, states sufficient facts to plausibly obtain relief under federal and state law.  Flagship's arguments to the contrary go beyond the Court's authority or are procedurally premature.  Therefore, Flagship's First and Second Motions to Dismiss Hallman's Amended Complaint are denied.  To streamline future proceedings, Hallman is directed to either file an amended complaint for the limited purpose of addressing Flagship's arguments or advise the Court whether is prefers standing on its current complaint.

## BACKGROUND

Flagship is a Nebraska company that owns and operates restaurants across the country, including Blue Sushi Sake Grill chain.  Filing No. 35 at 1–2, ¶ 2, Hallman's

Amended Complaint. Hallman worked as a bartender, server, and trainer at the Blue Sushi Sake Grill location in Kansas City, Missouri. *Id.* at 5 ¶ 1. Hallman alleges Flagship paid its servers and bartenders less than what they were owed under state and federal wage and hour laws. *Id.* at 2, ¶ 4. Hallman's specific allegations fall into four categories.

First, Hallman alleges she was required to spend more than twenty percent of her time on non-tipped "side work." Filing No. 35 at 10, ¶¶ 26–28. Specifically, Flagship required Hallman "to engage in non-tip-producing activities, such as rolling silverware, cleaning tables, and a variety of other side work for more than 20% of her time." *Id.*, ¶ 26.

Second, Hallman alleges she was required to pool her tips with non-tipped employees. Filing No. 35 at 2–4, ¶¶ 5–21. Specifically, tips earned by servers and bartenders were split into "a Sushi Tip, a Bar Tip, and a Support Tip" and used to compensate non-tipped employees. *Id.* at 2–3, ¶¶ 7, 9. Flagship operated the tip pool using a computerized Point of Sale System. *Id.*, ¶¶ 8–9. The system automatically tracked gratuities left on credit card tabs and the server or bartender manually inputted cash tips. *Id.*, ¶ 9. The system diverted a certain percentage of the earned gratuities to "non-direct service employees, specifically Sushi Chefs, support staff, server assistants, and food runners" according to a set formula. Filing No. 35. At the end of the shift, the server or bartender received their earned tips, less the amount diverted to non-tipped employees. *Id.* Hallman was told that she was "required to provide some of the tips she earned during her shift to other employees" and "was verbally told" she was "required to tip-share." *Id.* at 3, ¶ 11. *See also id.* at 2, ¶ 6 ("Defendant informed Plaintiff that throughout her employment, servers and bartenders are required to provide some of the

tips she earned during a given shift to other employees."). Specifically, after complaining to management about the practice, management told Hallman "it's the policy" and "this is the way we do things." *Id*. at 3, ¶ 18.

Third, "for at least part of the statutory period" Flagship took tip credit without providing notice required under 29 C.F.R. § 531.59. Filing No. 35 at 11, ¶ 33. Specifically, Defendant did not post in a conspicuous and accessible place in the restaurant a summary of tip-pooling prohibitions and related rules." *Id*. at 4, ¶ 19. Hallman was informed she was required to share tips with non-tipped employees and, presumably, could not retain all tips not paid into "a tip pooling arrangement limited to employees who customarily and regularly receive tips." *Id*. at 2, ¶ 6; 29 C.F.R. § 531.59(b).

Fourth, "Flagship . . . had a policy that it did not pay for all overtime hours worked" and "often required that [Hallman] . . . work more than forty (40) hours per week." Filing No. 35 at 10–11, ¶ 32, 13 ¶ 49.

Hallman's employment with Flagship ended and she filed the present lawsuit. She seeks to maintain it as an opt-in FLSA collective action and a class action under state law. Filing No. 35 at 5–6, ¶¶ 5–6. The Court has federal question jurisdiction under 28 U.S.C. § 1331 because Count I arises under the FLSA, a federal statute. The Court has supplemental jurisdiction over Hallman's state law claims under 28 U.S.C. § 1367 because Hallman's state law wage and hour and equitable claims are "part of the same case or controversy" as her FLSA claims. Venue is proper in the District of Nebraska because Flagship is headquartered in Nebraska, and, in any event, Flagship did not object to venue in their first motion to dismiss. 28 U.S.C. § 1391(b)(1); Fed. R. Civ. P. 12(h)(1)(A) (challenge to venue waived by omitting it from a Rule 12 Motion).

3

**LEGAL STANDARD**

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 n.3 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic Corp., 550 U.S. at 555). In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff's obligation to provide the grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp., 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

The focus of a 12(b)(6) Motion is the facts pled, not the theory of legal relief articulated. "The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved." Topchian v. JPMorgan Chase Bank, N.A., 760 F.3d 843, 898 (8th Cir. 2014) (quoting Redland Ins. Co. v. Shelter Gen. Ins. Companies, 121 F.3d 443, 446 (8th Cir. 1997)). "The well-pleaded facts alleged in the complaint, not the legal theories of recovery or legal conclusions identified therein, must be viewed to determine whether the pleading party provided the necessary notice and thereby stated a claim in the manner contemplated by the federal rules." Id. (quoting Parkhill v. Minnesota Mut. Life Ins. Co., 286 F.3d 1051, 1057–58 (8th Cir. 2002).

Nebraska substantive law governs Hallman's unjust enrichment claim. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). In analyzing Hallman's unjust enrichment claim the Court is "bound in [its] interpretations of Nebraska law by the decisions of the Nebraska Supreme Court." *Packard v. Darveau*, 759 F.3d 897, 901 (8th Cir. 2014) (quoting *Lindsay Mfg. Co. v. Hartford Acc. & Indem. Co.*, 118 F.3d 1263, 1267 (8th Cir. 1997). If the Nebraska Supreme Court has not considered an issue, the Court must "predict what the court would decide if it were to address the issue" based on "relevant state precedent, analogous decisions, considered dicta, . . . and any other reliable data." *Id.* (internal quotations omitted).

## DISCUSSION

### A. FLSA Claim (Count I)

At the onset the Court notes that Flagship did not argue the sufficiency of the allegations on Hallman's federal claim or argue the law was unsettled by *Kisor* or *Loper Bright* in their first motion to dismiss. *See* Filing No. 43 at 1 ("Defendant Flagship Restaurant Group, LLC ("Flagship") respectfully submits this brief in support of its Motion to Dismiss Counts II and III of the Amended Complaint.") Those arguments were available to Flagship at the time it filed its first motion to dismiss. *Compare Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) (issued June 28, 2024) *and Kisor v. Wilkie*, 588 U.S. 558 (2019) (issued Jone 26, 2019) *with* Filing No. 42 (Flagship's first Motion to Dismiss filed August 12, 2024). This violates Fed. R. Civ. P. 12(g)(2) which provides "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."[1]

---

[1] Fed. R. Civ. P. 12(g)(2) provides two exceptions outlined in Rules 12(h)(2) and 12(h)(3), neither of which is applicable here. Fed. R. Civ. P. 12(h)(2) allows a party to argue that the complaint fails to state a claim

Therefore, these three arguments are likely procedurally defaulted.  *See Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 320 (3d Cir. 2015) *cited with approval in Smith v. Cent. Platte Nat. Res. Dist.*, 735 F. App'x 227, 228 (8th Cir. 2018) (noting Rule 12(g)(2) "is intended to eliminate unnecessary delay at the pleading stage by encouraging the presentation of an omnibus pre-answer motion in which the defendant advances every available Rule 12 defense simultaneously rather than interposing these defenses and objections in piecemeal fashion.").  However, Hallman does not raise this as an argument for denying the motion, the parties have fully briefed the merits, and the Court finds it more efficient to address the arguments now, rather than require the parties to engage in the empty formality of reraising the arguments on a Motion for Judgment on the Pleadings.  *See* Filing No. 59 (opposing Flagship's Second Motion to Dismiss on the merits).  This should not be read as approving Flagship's procedurally improper approach of adding old arguments alongside newly available arguments.  In the future, counsel would be better served by raising all their arguments in a single motion under Fed. R. Civ. P. 12(b) or waiting until pleadings are closed and filing a motion under Fed. R. Civ. P. 12(c).

In any event, Flagship's motion fails on the merits.  Hallman's complaint is sufficient to state a plausible claim under the FLSA under four theories of relief.  Flagship's arguments regarding the 80/20 rule, *Kisor*, and *Loper Bright* are procedurally premature and better pitched to the *en banc* Eighth Circuit, the Supreme Court, or the Department

---

for relief in a pleading under Rule 7(a), a motion for judgment on the pleadings under Rule 12(c) "[a]fter the pleadings are closed," or at trial.  Flagship's Second Motion to Dismiss is not a pleading, the pleadings are not closed, and this matter is not at trial.  Fed. R. Civ. P. 12(h)(3) allows the Court to dismiss based on lack of subject matter "at any time."  The arguments raised in Flagship's Second Motion to Dismiss do not relate to the Court's subject matter jurisdiction.

of Labor. Therefore, Flagship's Motion to Dismiss is denied as to Hallman's federal claims.

### 1. Non-payment of the minimum wage when Hallman engaged in non-tip producing activities.

Hallman states a claim under the FLSA based on Flagship's payment of the tipped minimum wage for shifts in which she was engaged in non-tip producing activities.

### a. Legal framework

The FLSA allows an employer of "tipped employees" to pay a lower cash minimum wage, so long as the tips received by the employee make up the difference between the subminimum wage and minimum wage. 29 U.S.C. § 203(m)(2)(A). If the tips do not add up to the minimum wage for a given shift, the employer must pay the difference. *Id.* An employer's payment of subminimum wage subject to tips is known as taking a tip credit. *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 876 (8th Cir. 2011). A "tipped employee" is "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t).

A frequent challenge for employers, employees, and the Department of Labor has been circumstances in which employees spend their time on some tasks that are tipped and others that are not. For example, when "a maintenance person in a hotel also works as a server," the employee in question is engaged in both tip-producing and not tip-producing occupations on behalf of the employer. 29 C.F.R. § 531.56(e) (2019).[2] The Department of Labor addressed this issue in 1967 with the Dual Jobs Regulation.[3] The

---

[2] After the national vacatur of the 2020 80/20 Rule, the law reverted to the pre-rulemaking status quo. Therefore, the Court is citing to the Dual Jobs regulation as it existed before the 2021 amendments.

[3] The Dual Jobs Regulation was promulgated a year after the 1966 Amendments to the FLSA under an explicit (and expansive) grant of rulemaking authority and has been a feature of the law ever since. *See* Fair Labor Standards Amendments of 1966, Pub. L. No. 89-601 §§ 101, 603, 80 Stat. 830, 830 (1966)

regulation provided, in that instance, "[t]he employee is employed in two occupations, and no tip credit can be taken for the employee's hours of employment in the occupation of maintenance person." *Id.* The regulation contrasted this example with "a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses." *Id.* In the maintenance person example, the hotel may pay the subminimum wage for the employee's time spent as a server but must pay minimum wage for the employee's time spent performing maintenance. In contrast, in the waitress example, the employer can pay the subminimum wage for "related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips." *Id.*

The regulations left open the question of where the line is between "occasionally" or "part of the time" engaging in related tasks versus engaging in a different occupation. In response to those questions, the Department of Labor issued sub-regulatory guidance on how to determine when an employee was involved in a dual role versus occasionally engaging in related work. Across opinion letters, the Department further refined the test from the Dual Jobs Regulation, concluding, for example, that a waitress who was required to stock the salad bar before opening was engaged in a dual job, and that a waiter who performed preparatory activities for 30% to 40% of his shift was engaged in a dual job and did not qualify for the tip credit for the time spent on preparatory activities. *Tip Regulations Under the Fair Labor Standards Act (FLSA); Partial Withdrawal*, 86 F.R. 60114, 60116 (Oct. 29, 2021) (summarizing the pre-1988 sub-regulatory guidance). The 1988 Field Operations Handbook formalized this guidance, advising "where the facts

_____

(defining "tipped employee" and authorizing the Secretary of Labor "to promulgate necessary, rules, regulations, or orders with regard to the amendments made by this Act.").

indicate that specific employees are routinely assigned to maintenance, or that tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties." *Id.* at 60117.

The Eighth Circuit confronted this guidance under analogous circumstances in *Fast.* 638 F.3d at 872. There, the plaintiffs were a class of servers and bartenders who were required to spend more than 20% of their time on non-tip-producing activities. *Id.* at 875. Specifically, the bartenders "were required to perform such duties as wiping down bottles, cleaning blenders, cutting fruit for garnishes, taking inventory, preparing drink mixers, and cleaning up after closing hours" and the servers "performed such duties as cleaning bathrooms, sweeping, cleaning and stocking serving areas, rolling silverware, preparing the restaurant to open, and general cleaning before and after the restaurant was open." *Id.* The district court denied summary judgment to Applebee's based on the Department of Labor's guidance in the 1988 Field Operations Handbook articulating the 20% test. *Id.* The Eighth Circuit affirmed.

Specifically, the Court noted that the Department of Labor's interpretation of 29 U.S.C. § 203(t) embodied in the Dual Jobs Regulation, was entitled to deference under the *Chevron* framework,[4] and the "the impact of an employee performing related duties more than 'part of [the] time' or more than 'occasionally'" was ambiguous on the face of the regulation. *Id.* at 879–80. In doing so, they rejected the argument that the Dual Jobs Regulation and sub-regulatory guidance's use of "a quantitative limit on the amount of time a tipped employee can spend performing duties related to her tipped occupation"

---

[4] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984) (holding in the case of statutory ambiguity the reviewing court should defer to the agency's reasonable interpretation).

was inconsistent with 29 U.S.C. § 203(t).  *Id.*  Applying *Auer* deference,[5] the court held that the 20% cutoff articulated in 1988 Handbook was a valid interpretation of the Dual Jobs Regulation.  *Id.* at 880–81.  The upshot of *Fast* is that a class of servers and bartenders can maintain an FLSA claim based on allegations that they spent more than 20% of their time on tasks such as cleaning, prep work, and silverware rolling because they were working dual jobs.

After some seesawing back and forth for a number of years, the Department of Labor formalized the sub-regulatory guidance as a Rule in 2021 ("The 80/20 Rule").  86 Fed. Reg. 60,114 (Oct. 29, 2021) (amending 29 C.F.R. § 531.56(f)).  Under the rule an employee is not engaged in a dual occupation while performing "work that produces tips" and "work that directly supports the tip-producing work, if the directly supporting work is not performed for a substantial amount of time."  *Id.*  For example, "[a] server's tip-producing work includes providing table service, such as taking orders, making recommendations, and serving food and drink" and their "directly supporting work includes dining room prep work, such as refilling salt and pepper shakers and ketchup bottles, rolling silverware, folding napkins, sweeping or vacuuming under tables in the dining area, and setting and bussing tables."  *Id.* §§ 531.56(f)(2)–(3).  Under the 80/20 Rule, an employer could take a tip credit so long as the employee's time spent on directly supporting work did not exceed 20% of their work time.  *Id.* § 531.56(f)(5).

---

[5] *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (holding an agency's interpretation of its own regulations is "controlling unless plainly erroneous or inconsistent with the regulation") (internal quotations omitted).  In *Kisor v. Wilke*, the Supreme Court declined to overrule *Auer* but cabined its application to cases of "genuine ambiguity" where the agency's interpretation is an authoritative position, related to its area of expertise, and a "fair and considered judgment."  *Kisor*, 588 U.S. at 573–80.

The Fifth Circuit vacated the 80/20 Rule nationally, holding it was contrary to the text of the FLSA and arbitrary and capricious. *Rest. L. Ctr. v. United States Dep't of Lab.*, 120 F.4th 163, 177 (5th Cir. 2024). Relevant here, the Court held Congress's use of the term "occupation" foreclosed the task-by-task analysis of supporting work used by the 80/20 Rule. *Id.* at 172. Moreover, the operative statutory term is "tipped employee", and it would be unusual that an employee could be a tipped employee while performing the tip-producing tasks and transform into a non-tipped employee when performing related non-tip-producing tasks. *Id.* at 173. That language in the Fifth Circuit's view, forecloses the Department of Labor from adopting a definition of "engaged in an occupation" that was "more granular than simply to be employed in a job." *Id.* at 172–73. The Fifth Circuit recognized that the "engaged in" language "clarifies that the tip credit applies to occupations, rather than, for example, to the entire employment relationship even where the employee performs the work of two or more occupations" and indicated it was not casting doubt on the validity of the Dual Jobs Regulation or addressing the question before the Eighth Circuit in *Fast*. *Id.* at 174. The Fifth Circuit's vacatur of the rule applied nationally and the Department of Labor did not seek certiorari from the Supreme Court.

When a rule is vacated, the "vacated agency action is a nullity that has no force and effect." *Alabama Power Co. v. U.S. E.P.A.*, 40 F.3d 450, 456 (D.C. Cir. 1994). "When a court vacates an agency's rule, it restores the status quo before the invalid rule took effect." *Keystone-Conemaugh Projects LLC v. United States Env't Prot. Agency*, 100 F.4th 434, 446 (3d Cir. 2024). Moreover, the Fifth Circuit's vacatur specified that it was "vact[ing] the Final Rule insofar as it modifies 29 C.F.R. § 531.56 as promulgated in 1967" and did not restore the 2020 Rule that was withdrawn in the same agency action. 120

F.4th at 177; Petition for Panel Rehearing at 1–2, *Restaurant Law Center*, 120 F.4th 163 (proposing the quoted language to clarify that the Dual Jobs Regulation was returned to its pre-2020 status quo).  Therefore, the 2019 version of the Dual Jobs Regulation and pre-80/20 Rule circuit caselaw control.

To summarize the current state of play: The 20% cutoff for related work is a longstanding feature of the Department of Labor's interpretation of the Dual Jobs Regulation.  In *Fast*, the Eighth Circuit adopted the Department of Labor's interpretation of the Dual Jobs Regulation, including the 20% cutoff for related work.  The Department of Labor codified this interpretation in the 80/20 Rule.  The 80/20 Rule amending the Dual Jobs Regulation was vacated by the Fifth Circuit, returning the law to the status quo under the 1967 Dual Jobs Regulation.  Therefore, the controlling law for this case is the 1967 Dual Jobs Regulation as interpreted by the Eighth Circuit in *Fast*.

### b. Allegations

Here, Hallman alleges that she was required to perform other work including "rolling silverware, cleaning tables, and a variety of other side work for more than 20% of her time." Filing No. 35 at 10, ¶¶ 26–28.  This is sufficient to state a claim under the FLSA because it raises the inference that servers were no longer involved in an "occasional" or "part of the time" performance of related work but rather were working in a dual role as tipped servers and non-tipped bussers or janitors.  29 C.F.R. § 531.56(e).  Moreover, *Fast* held allegations that servers and bartenders spent more than 20% of their time performing similar work is cognizable under the FLSA.  *Fast*, 638 F.3d at 881.  Overall, there is sufficient factual matter to plausibly allege a violation of the FLSA under the Dual Jobs Regulation as interpreted by *Fast*.

12

The Court notes its determination on the pleadings is narrow. It does not resolve what duties the 20% cutoff applies. *Fast*, 638 F.3d at 881. It may be, on a full record, that some duties are properly categorized as part of Hallman's core occupation. These questions are better answered at summary judgment or class certification on a record showing the nature, timing, and duration of the "side work" alleged in the Amended Complaint. The Court does not express any opinion on this issue and only determines that, construing all inferences in Hallman's favor, there are enough facts alleged to go forward.

### c. Flagship's Arguments

Flagship argues two recent legal developments have undermined *Fast*, to the point that the Court need not follow it: (1) the Fifth Circuit's decision in *Restaurant Law Center*, and (2) the Supreme Court's decision in *Loper Bright*, jettisoning the *Chevron* framework.

Certainly, the Fifth Circuit's national vacatur of the 80/20 Rule has consequences for this litigation. Specifically, the 80/20 Rule is no longer a controlling source of authority from the agency. However, the practical impact of vacatur is to return the law to the pre-rulemaking status quo. *Keystone-Conemaugh Projects LLC*, 100 F.4th at 446; *Restaurant Law Center*, 120 F.4th at 177. Here, the Eighth Circuit interpreted the Dual Jobs Regulation to encompass the principles of the 80/20 Rule articulated in earlier sub-regulatory guidance, meaning Hallman's allegations are cognizable under the FLSA. Therefore, the Fifth Circuit's vacatur alone is not a basis for dismissal.

Flagship argues because *Restaurant Law Center* found the legal interpretation underlying the 80/20 Rule unlawful and the decision had national impact, surely the interpretation is not lawful here. Filing No. 55 at 6. Not so. Decisions of other circuit

courts, even ones with national impact, are not binding on this Court. *See Iverson v. United States*, 973 F.3d 843, 847 (8th Cir. 2020) (out of Circuit "decisions provide persuasive authority only"). Moreover, even if the Court were to find the Fifth Circuit's analysis in *Restaurant Law Group* more persuasive, *Fast* "is controlling until overruled by our court *en banc*, by the Supreme Court, or by Congress." *M.M. ex rel. L.R. v. Special Sch. Dist. No. 1*, 512 F.3d 455, 459 (8th Cir. 2008). The Court has no authority to leapfrog the Court of Appeals, even if it believes a decision was wrong or that the circuit *en banc* would consider the issue differently under the current law. *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) ("In a hierarchical system, decisions of a superior court are authoritative on inferior courts. Just as the court of appeals must follow decisions of the Supreme Court whether or not we agree with them, . . . so district judges must follow the decisions of this court whether or not they agree."). At best, *Restaurant Law Center* creates a split in authority Flagship can point to in their en banc petition or petition for certiorari but does not get them to a dismissal on 12(b)(6).

Certainly, the Court could revisit the issues settled by *Fast* if it was called into question by a subsequent decision of the Supreme Court. Flagship contends *Loper Bright* and *Kisor* meet that standard. Filing No. 55 at 6–8. The Court disagrees. Specifically, *Loper Bright* addressed a rule related to the payment of fishing monitors not the standard for tipped employees under the FLSA. *See* 603 U.S. at 380–81. Moreover, the Supreme Court indicated it did "not call into question prior cases that relied on the *Chevron* framework" because those decisions "are still subject to statutory stare decisis despite our change in interpretive methodology." *Id.* at 412. "Mere reliance on *Chevron* cannot constitute a special justification for overruling such a holding, because to say a precedent

14

relied on *Chevron* is, at best, just an argument that the precedent was wrongly decided." *Id.* (citations omitted). Likewise, the Supreme Court in *Kisor* did not destroy the foundations of *Fast* when it upheld *Auer* deference, the doctrine relied on by the Eighth Circuit.[6] *Kisor*, 588 U.S. at 563. Even Justice Gorsuch, who would have overturned *Auer*, did not understand the methodological change he proposed to call into question specific applications of the doctrine. *Id.* at 630 (Gorsuch J., concurring) ("[D]ecisions construing particular statutes continue to command respect even when the interpretive methods that led to those constructions fall out of favor."). Flagship argues that these decisions represent "seismic changes in administrative law." Filing No. 55 at 6. While true, the mere fact that the prevailing judicial mood is more hostile to agency interpretations does not give the Court the ability to ignore binding precedent. In sum, the Court cannot treat *Fast* as a nullity because it relied in part on *Chevron* or *Auer* because, a matter of vertical stare decisis, the Court must apply *Fast*'s interpretation of the Dual Jobs Regulation, "even [if] the interpretive methods that led to those constructions f[e]ll out of favor." *Kisor*, 588 U.S. at 630 (Gorsuch J., concurring).

Flagship's final argument concedes "*Fast* is not overturned but must be read narrowly given its substantial reliance on *Chevron* deference in rejecting the opposing arguments of the restaurant employer. This Court is now free to do what the *Fast* court was not free to do: interpret the law for itself." Filing No. 61 at 7. Candidly, the Court is unsure how it could read *Fast* narrowly "on [its] facts" to dismiss Hallman's claims. *Id.* at 5. Specifically, the facts in *Fast*, an FLSA collective action in which servers and

---

[6] Tellingly, Flagship does not offer any argument as to why *Fast* would come out differently applying the *Kisor* framework. Filing No. 55 at 7; Filing No. 61 at 6. Instead, somewhat nonsensically, it gestures to the fact that *Fast* is not a "seminal case." Filing No. 61 at 6. The Court is required to follow binding precedent no matter how seminal the case or how many times it has been cited.

bartenders were required to perform unrelated cleaning and preparatory activities for more than 20% of their time are identical to the allegations here. *Compare Fast*, 638 F.3d at 875 *with* Filing No. 35 at 10, ¶¶ 26–28. Therefore, no matter how narrowly the Court reads *Fast*, dismissal is inappropriate.

Flagship's arguments are preserved for review by the Eighth Circuit *en banc* but do not mandate dismissal at this stage. If the Eighth Circuit, Supreme Court, Congress, or Department of Labor act in this area while this case is pending Flagship is welcome to bring those developments to the Court's attention.

### 2. Pooling tips with non-tipped workers.

Likewise, Hallman's allegations regarding a coerced tip pool involving non-tipped employees are sufficient to state a claim under the FLSA.

### a. Legal framework

As discussed *supra* Section A.1.a, the FLSA's minimum wage requirements apply differently to tipped employees. 29 U.S.C. § 203(m)(2)(A) (allowing an employer to credit a tipped employee's gratuities against the hourly minimum wage and pay the difference). Complications arise when an employer attempts to smooth out the variance inherent in tipping by pooling tips and redistributing them to the employees along a set formula.

29 U.S.C. § 203(m)(2)(A) provides that to take a tip credit, "all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." The Department of Labor, pursuant to its statutory rulemaking authority,[7] promulgated regulations addressing when an employer's tip pool is permissible

---

[7] Fair Labor Standards Act Amendments of 1974, PL 93–259 (S 2747), PL 93–259, APRIL 8, 1974, 88 Stat 55, 88 Stat. 55, 64–65, § 13(e) and 76 § 29(b) (1974) (adding the language regarding tip pools and

under § 203(m)(2)(A). 29 C.F.R. § 531.52(b)(1) ("An employer may exert control over an employee's tips only to distribute tips to the employee who received them, require employees to share tips with other employees in compliance with § 531.54, or, where the employer facilitates tip pooling by collecting and redistributing employees' tips, distribute tips to employees in a tip pool in compliance with § 531.54."). An employer who takes tip credit is permitted to operate a tip pool "limited to employees who customarily and regularly receive tips" so long as the employer gives notice to the employees in the tip pool and does not allow management to receive tips from the pool. 29 C.F.R. § 531.54(c). In contrast, if the employer does not take tip credit (i.e., pays its tipped employees minimum wage) is permitted to "impose a tip pooling arrangement that includes dishwashers, cooks, or other employees in the establishment who are not employed in an occupation in which employees customarily and regularly receive tips." *Id.* § 531.54(d). Likewise, the regulations allow for employer to "redistribute[] the tips to the employees upon some basis to which they have mutually agreed among themselves." *Id.*

Therefore, Flagship's tip pooling practices violate the FLSA if: (1) Flagship took the tip credit, (2) the tip pool included employees who do not "customarily and regularly receive tips," and (3) the tip pool was not "mutually agreed upon" among the employees." 29 C.F.R. § 531.54; *Wajcman v. Inv. Corp. of Palm Beach*, 620 F. Supp. 2d 1353, 1355 n.3 (S.D. Fla. 2009) ("If tipped employees are required to participate in a tip pool with other employees who do not customarily receive tips, then the tip pool is invalid . . ..").

### b. Allegations

---

authorizing the Secretary of Labor "to prescribe necessary rules, regulations, and orders with regard to the amendments made by this act.").

Here, Hallman plausibly alleges Flagship operated an illegal tip pool. Specifically, the complaint alleges that Flagship took the tip credit rather than paying its tipped employees minimum wage and Hallman was a tipped employee. Filing No. 35 at 9, ¶ 25. Hallman's tips were pooled through the Point of Sale System and distributed to other employees along a set formula. *Id*. at 2–3, ¶ 9. The tips were distributed to non-tipped employees including "Sushi Chefs, support staff, server assistants, and food runners." *Id*. at 2. Finally, Hallman's allegations that she was told by management that she was required to tip share raises the inference that the tip sharing was not "mutually agreed upon" by employees but rather required by management. *Id*. at 3, ¶ 11, 2, ¶ 6; 29 C.F.R. § 531.54(d). Therefore, Hallman alleges sufficient facts to plausibly allege a violation of the FLSA provisions and Department of Labor Regulations regarding tip pools.

### c. Flagship's arguments

Flagship's attempts to avoid this conclusion, arguing that not all mandatory tip sharing is illegal under the FLSA and Hallman's allegations regarding the non-tipped employees are too conclusory to go forward. Filing No. 55 at 8. The Court agrees under the FLSA, there are permissible forms of tip sharing (including voluntary agreements between employees and tip sharing between tipped employees). *See* 29 C.F.R. § 531.54. However, based on the allegations detailed above, Hallman has pled sufficient facts to plausibly infer that Flagship's tip pooling activities fall on the illegal side of the line. Flagship will have the opportunity to disprove those allegations and demonstrate the true nature of its tip sharing activities in discovery and on summary judgment. Flagship's second argument fares no better because Hallman's complaint articulates which types of employees were included in the tip pool and alleges they did not regularly receive tips.

Filing No. 35 at 2–3, ¶ 9. This is sufficient at the pleading stage to infer these other categories of employees were not tipped employees and were included in the tip pool.

### 3. Failure to provide notice of a tip credit.

Hallman's allegations regarding taking the tip credit without receiving proper notice state a plausible claim for relief. Specifically, 29 C.F.R. § 531.59(b) requires an employer who applies a tip credit to tipped employee wages to provide notice of the applicable wage and hour laws, including:

> The amount of the cash wage that is to be paid to the tipped employee by the employer; the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; that all tips received by the tipped employee must be retained by the employee except for a tip pooling arrangement limited to employees who customarily and regularly receive tips; and that the tip credit shall not apply to any employee who has not been informed of the requirements in this section.

29 C.F.R. § 531.59(b). Here, while not overly detailed Hallman alleges "Defendant informed Plaintiff that throughout her employment, servers and bartenders are required to provide some of the tips she earned during a given shift to other employees" and "Defendant did not post in a conspicuous and accessible place in the restaurant a summary of tip-pooling prohibitions and related rules." Filing No. 35 at 2, ¶ 6, 4, ¶ 19. These allegations raise the inference that Hallman was not informed "that all tips received by the tipped employee must be retained by the employee except for a tip pooling arrangement limited to employees who customarily and regularly receive tips. 29 C.F.R. § 531.59(b). The Court agrees with Flagship that the messy organization of the complaint makes it difficult to determine how notice was deficient. However, taken as a whole, the Amended Complaint's description of Flagship's communications and omissions regarding

19

the tip pool plausibly alleges that Flagship did not provide the requisite notice for taking the tip credit.

### 4. Failure to pay overtime.

Though largely ignored by the parties, Hallman's allegations regarding overtime violations, while skeletal, is sufficient to state a claim.  29 U.S.C. § 207(a)(2) provides "[n]o employer shall employ any of his employees . . . for a workweek longer than forty hours . . . unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  The Eighth Circuit has not addressed whether a plaintiff in an FLSA overtime claim can survive a motion to dismiss based on allegations they worked more than forty hours in a week or whether they must provide additional detail (i.e., a specific date or description of the nature of the work).  *See Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 962 (8th Cir. 2015) (acknowledging a split in authority but ruling on other grounds).  However, prior cases from the District of Nebraska have concluded that "[p]laintiffs are required 'to plead coverage, that the employee worked more than 40 hours in one workweek, and that the employee was not paid overtime compensation;' they need not plead a specific workweek in which they worked more than forty hours."  *Walkinshaw v. Saint Elizabeth Reg'l Med. Ctr.*, 428 F. Supp. 3d 171, 180 (D. Neb. 2019) (*quoting Hugler v. Cilantros Mexican Bar & Grill, LLC*, No. 8:17CV74, 2017 WL 3995543, at *3 (D. Neb. Sept. 8, 2017) (collecting cases)).  Here, Flagship is covered employer[8] and Hallman alleges weeks in which she was required to worker longer than

---

[8] The FLSA's overtime provisions applies to employers "engaged in commerce" subject to exceptions not relevant here. 29 U.S.C. § 207(a)(1).  The pleadings establish that Flagship is covered employer for the purpose of a motion to dismiss. Filing No. 35 at 9, ¶¶ 19–23.

forty hours.  Filing No. 35 at 10–11, ¶ 32, 13 ¶ 49.  While this lack of specificity may prove fatal on the merits, Hallman states a plausible claim for a violation of the FLSA's overtime provisions and can move past the pleading stage.

Hallman's complaint alleges sufficient facts to state a plausible claim for relief under the FLSA.  Therefore, Flagship's motion to dismiss Hallman's federal claims is denied.

### B.  MMWL Claim (Count II)

Hallman's claim can proceed under the MMWL because Hallman's allegations regarding non-payment of overtime discussed *supra* Section A.4 are clearly cognizable under Missouri law.  *Compare* Mo. Rev. Stat. § 290.505(1) ("No employer shall employ any of his employees for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.") *with* Filing No. 35 at 10–11, ¶ 32, 13 ¶ 49 (alleging Hallman worked more than forty hours in a week, without being paid overtime rates).

Flagship argues the non-tip-producing work, tip credit notice, and tip pooling claims are not cognizable under Missouri law.  Filing No. 43 at 2.  Specifically, Flagship argues these theories are creatures of federal regulatory law that have not been adopted by the Missouri legislature or Department of Labor.  *Id*. at 3–7.  On a 12(b)(6) motion, the question is only whether there are sufficient facts alleged to support a plausible claim for relief.  *Topchian*, 760 F.3d at 848.  For that reason, the Court cannot grant partial dismissal of the claim and shave off certain legal theories.  *See BBL, Inc. v. City of Angola*, 809 F.3d

317, 325 (7th Cir. 2015) ("A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief.").  Even if the Court rejected certain theories under state law, dismissal would be inappropriate because there are enough facts to plausibly recover under the MMWL.  Therefore, Flagship's statutory argument, while compelling, does not mandate dismissal.  Flagship is welcome to reraise these arguments on a Motion for Summary Judgment or in opposition to a Motion for Class Certification.

### C. Unjust Enrichment Claim (Count III)

Flagship contends that Hallman's unjust enrichment claim cannot proceed under Nebraska Law because the parties' relationship (at will employment) is contractual in nature.  Filing No. 43 at 7–8.  Flagship's contention is premature.

Under Nebraska law, the elements of a contract are the "existence of a promise, its breach, damage, and compliance with any conditions precedent that activate the defendant's duty."  *Henriksen v. Gleason*, 643 N.W.2d 652, 658 (Neb. 2002).  A claim for unjust enrichment requires showing: "justice and equity require the defendant to disgorge a benefit that he or she has unjustifiably obtained at the plaintiff's expense."  *City of Scottsbluff v. Waste Connections of Nebraska, Inc.*, 809 N.W.2d 725, 738 (Neb. 2011).  Nebraska law differentiates between an implied contract and unjust enrichment quasi-contract claims.  *Id.* at 737–38.  An implied contract arises when "the intention of the parties is not expressed but where the circumstances are such as to show a mutual intent to contract."  *Id.* at 737.  "If the parties' conduct is sufficient to show an implied contract, it is just as enforceable as an express contract."  *Id.*  "In contrast, a claim that a court should

imply a promise or obligation to prevent unjust enrichment . . . is not a contract." *Id.* at 787. Rather, "[t]he law imposes" quasi-contractual obligations "when justice and equity require the defendant to disgorge a benefit that he or she has unjustifiably obtained at the plaintiff's expense." *Id.* When an express contract (even one implied-in-fact) applies, "the express contract claim will supersede a quasi-contract claim arising out of the same transaction to the extent that the contract covers the subject matter underlying the requested relief." *Bloedorn Lumber Co. of N. Platte v. Nielson*, 915 N.W.2d 786, 793 (Neb. 2018). However, "although contract claims supersede unjust enrichment or quasi-contract claims, a plaintiff is permitted to allege both" and the Court can fall back on unjust enrichment if the contract claim fails. *Id.*

Although the Nebraska Supreme Court has not addressed this exact issue, caselaw from the Nebraska Court of Appeals illustrating the line between the implied contract and quasi-contract in the wage context is instructive. *See Aetna Cas. & Sur. Co. v. Gen. Dynamics Corp.*, 968 F.2d 707, 712–13 (8th Cir. 1992) ("Although decisions of a state's intermediate appellate courts are not binding upon us, they are persuasive authority, and we must follow them when they are the best evidence of what the state's law is."). In *Tracy v. Tracy*, the Nebraska Court of Appeals addressed a plaintiff who performed garbage collection work for a family member without payment. *Tracy v. Tracy*, 581 N.W.2d 96, 100 (Neb. Ct. App. 1998). After trial, the district court entered judgment in favor of the plaintiff on a quasi-contract theory based on the value of the services provided by the plaintiff and the Court of Appeals affirmed. *Id.* Specifically, the evidence presented at trial did not show that the parties' relationship was not controlled by an express agreement because "there was not a meeting of the minds between the parties

regarding whether Lloyd would pay for the services or the manner of any such payment." *Id.* at 101. Therefore, the court allowed "recovery based on the equitable doctrine that one will not be allowed to profit or enrich oneself unjustly at the expense of another." *Id.* Resolving an issue raised on cross appeal, the court determined that plaintiff ought to have been classified as an employee under Nebraska's wage and hour laws. *Id.* at 103; *see also Richardson v. Foxley Cattle Co.*, No. A-90-754, 1992 WL 296356, at *2–3 (Neb. Ct. App. Oct. 20, 1992) (finding allegations that a former employee was not paid for work performed on behalf of the company stated both implied contract and quasi-contract claims).

Reading *Tracy* against the backdrop of Nebraska's law of implied and quasi-contracts tells us three things. First, the existence of an employment relationship alone does not foreclose unjust enrichment, rather the key question is whether the specific circumstances are sufficient to demonstrate contract formation. Second, depending on the facts, an action for unpaid wages could be characterized as an implied contract or circumstances supporting a claim for unjust enrichment. Third, under Nebraska law the two theories can be pled in the alternative and the question of whether recovery sounds in implied contract or unjust enrichment is a merits question for resolution at summary judgment or trial.

Here, Hallman's allegations are cognizable under Nebraska law either on an implied contract theory or an unjust enrichment theory.[9] Specifically, she alleges she conferred a benefit on Flagship (her labor) without proper payment, giving rise to the interference that it would be inequitable for Flagship to retain the difference and quasi-

---

[9] The Amended Complaint does not point to any written employment contract governing the parties' relationship, therefore, at best, the pleadings demonstrate a potential implied contract.

contract relief is appropriate. *See* Filing No. 35 at 16, ¶¶ 2–4 and allegations discussed *supra* Section I. Alternatively, the circumstances pled in the Amended Complaint could give rise to the interference that Hallman and Flagship came to a meeting of the minds regarding payment of wages, and Hallman's relief lies in an implied contract. Filing No. 35 at 2–4 (describing Flagship's wage and hour policies); *Richardson*, 1992 WL 296356 at *2–3 (holding a claim for unpaid work cognizable at the pleading stage under a contract or quasi-contract theory). Under both Nebraska law and the Federal Rules of Civil Procedure, she is permitted to maintain the two in the alternative. *See Bloedorn Lumber Company of North Platte*, 915 N.W.2d at 793; Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). To clarify proceedings moving forward, Hallman should advise the Court whether she wants to replead her unjust enrichment claim as a claim in the alternative, or rest on the First Amended Complaint.

## CONCLUSION

Hallman's Amended Complaint pleads sufficient facts to plausibly state a claim under Federal and State law. Therefore, the case can move forward, and the Court can address Flagship's premature arguments in the proper procedural context.

THEREFORE, IT IS ORDERED:

1. Flagship's First (Filing No. 42) and Second (Filing No. 54) Motions to Dismiss are denied.

2. Within seven days of this order, Hallman shall either file a Second Amended Complaint or advise the Court it will stand on its current complaint. The limited purpose of the Second Amended Complaint is to conform the operative

pleading to the Court's order and clarify whether Count III (unjust enrichment) is pled in the alternative including a claim for breach of contract.  No other amendments are permitted without leave of the Court.  Once Hallman files her Second Amended Complaint, Flagship shall file an answer in accordance with Fed. R. Civ. P. 12(a)(1).

Dated this 15th day of January 2025.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge